**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF OAKLAND, a Municipal
Corporation, and The People of
the State of California, acting by
and through the Oakland City
Attorney; CITY AND COUNTY OF
SAN FRANCISCO, a Municipal
Corporation, and The People of
the State of California, acting by
and through the San Francisco
City Attorney Dennis J. Herrera,
*Plaintiffs-Appellants*,

v.

BP PLC, a public limited
company of England and Wales;
CHEVRON CORPORATION, a
Delaware corporation;
CONOCOPHILLIPS, a Delaware
corporation; EXXON MOBIL
CORPORATION, a New Jersey
corporation; ROYAL DUTCH
SHELL PLC, a public limited
company of England and Wales;
DOES, 1 through 10,
        *Defendants-Appellees*.

No. 18-16663

D.C. Nos.
3:17-cv-06011-WHA
3:17-cv-06012-WHA

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted February 5, 2020
Pasadena, California

Filed May 26, 2020
Amended August 12, 2020

Before:  Sandra S. Ikuta, Morgan Christen, and
Kenneth K. Lee, Circuit Judges.

Order;
Opinion by Judge Ikuta

## SUMMARY[*]

### Removal/Subject-Matter Jurisdiction

The panel vacated the district court's judgment and order denying defendants' motion to remand cases to the state court from which they had been removed on the ground that plaintiffs' claim arose under federal law, and remanded for the district court to consider whether there was an alternative basis for subject-matter jurisdiction.

The City of Oakland and the City and County of San Francisco filed complaints in California state court asserting

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

a California public-nuisance claim against five energy companies arising from the role of fossil fuel products in global warming. The complaints sought an order of abatement requiring the energy companies to fund a climate change adaptation program for the cities. The energy companies removed the complaints to federal court, identifying seven grounds for subject-matter jurisdiction, including that the cities' public-nuisance claim was governed by federal common law. The district court denied the cities' motion to remand the cases to state court, holding that it had federal-question jurisdiction under 28 U.S.C. § 1331 because the cities' claim was "necessarily governed by federal common law." The cities amended their complaints to include a federal nuisance claim. The district court dismissed for failure to state a claim, and it dismissed four defendants for lack of personal jurisdiction.

Considering the pleadings filed at the time of removal, the panel held that the state-law public-nuisance claim did not arise under federal law for purposes of § 1331. The panel explained that there is an exception to the well-pleaded complaint rule for a claim that arises under federal law because federal law is a necessary element of the claim. This exception applies when a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. The panel concluded that this exception did not apply because the state-law claim for public nuisance failed to raise a substantial federal question. A second exception, referred to as the "artful-pleading doctrine," allows removal where federal law completely preempts a state-law claim. The panel concluded that this exception did not apply because the state-law claim was not completely preempted by the Clean Air Act.

The panel further held that the cities cured any subject-matter jurisdiction defect by amending their complaints to assert a claim under federal common law. Thus, at the time the district court dismissed the cities' complaints, there was subject-matter jurisdiction. Nonetheless, the panel held that it could not affirm the district court's dismissals if there was not subject-matter jurisdiction at the time of removal. The panel concluded that the cities did not waive their argument in favor of remand by amending their complaints. The panel also rejected the energy companies' argument that any impropriety with respect to removal could be excused by considerations of finality, efficiency, and economy. The panel agreed with the Fifth Circuit that a dismissal for failure to state a claim, unlike a grant of summary judgment or judgment after trial, is generally insufficient to forestall an otherwise proper remand.

The panel remanded the cases to the district court to determine if there was an alternative basis for jurisdiction.

## COUNSEL

Michael Rubin (argued), Barbara J. Chisholm, Rebecca Moryl Lee, and Corinne F. Johnson, Altshuler Berzon LLP, San Francisco, California; Victor M. Sher and Matthew K. Edling, Sher Edling LLP, San Francisco, California; Barbara J. Parker, City Attorney; Maria Bee, Special Counsel; Erin Bernstein, Supervising Attorney; Malia McPherson, Deputy; Office of the City Attorney, Oakland, California; Dennis J. Herrera, City Attorney; Ronald P. Flynn, Chief Deputy; Yvonne R. Meré, Chief, Complex Litigation; Matthew D. Goldberg and Robb W. Kapla, Deputies; City Attorney's Office, San Francisco, California; for Plaintiffs-Appellants.

Theodore J. Boutrous, Jr. (argued), Andrea E. Neuman, and William E. Thomson, Gibson Dunn & Crutcher LLP, Los Angeles, California; Joshua S. Lipshutz, Gibson Dunn & Crutcher LLP, San Francisco, California; Neal S. Manne, Johnny W. Carter, Erica Harris, and Steven Shepard, Susman Godfrey LLP, Houston, Texas; Herbert J. Stern and Joel M. Silverstein, Stern & Kilcullen LLC, Florham Park, New Jersey; Andrea E. Neuman and William E. Thomson, Gibson Dunn & Crutcher LLP, Los Angeles, California; Joshua S. Lipshutz and Thomas G. Hungar, Gibson Dunn & Crutcher LLP, Washington, D.C.; Neal S. Manne, Johnny W. Carter, Erica Harris, and Steven Shepard, Susman Godfrey LLP, Houston, Texas; Herbert J. Stern and Joel M. Silverstein, Stern & Kilcullen LLC, Florham Park, New Jersey; for Defendant-Appellee Chevron Corporation.

Kannon K. Shanmugam (argued), Paul Weiss Rifkind Wharton & Garrison LLP, Washington, D.C.; Theodore V. Wells Jr., Daniel J. Toal, and Jaren Janghorbani, Paul Weiss Rifkind Wharton & Garrison LLP, New York, New York; M. Randall Oppenheimer and Dawn Sestito, O'Melveny & Myers LLP, Los Angeles, California; for Defendant-Appellant Exxon Mobil Corporation.

Daniel B. Levin, Munger Tolles & Olson LLP, Los Angeles, California; Jerome C. Roth and Elizabeth A. Kim, Munger Tolles & Olson LLP, San Francisco, California; David C. Frederick and Brendan J. Crimmins, Kellogg Hansen Todd Figel & Frederick P.L.L.C., Washington, D.C.; for Defendant-Appellee Royal Dutch Shell PLC.

Jonathan W. Hughes, Arnold & Porter Kaye Scholer LLP, San Francisco, California; Matthew T. Heartney and John D. Lombardo, Arnold & Porter Kaye Scholer LLP, Los Angeles,

California; Philip H. Curtis and Nancy Milburn, Arnold Porter Kaye Scholer LLP, New York, New York; for Defendant-Appellee for BP PLC.

Sean C. Grimsley and Jameson R. Jones, Bartlit Beck LLP, Denver, Colorado; Megan R. Nishikawa and Nicholas A. Miller-Stratton, King & Spalding LLP, San Francisco, California; Tracie J. Renfroe and Carol M. Wood, King & Spalding LLP, Houston, Texas; for Defendant-Appellant ConocoPhillips.

Jonathan Brightbill (argued) and Eric Grant, Deputy Assistant Attorneys General; Robert J. Lundman, R. Justin Smith, and Christine W. Ennis, Trial Attorneys; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; for Amicus Curiae United States.

Michael Burger, Morningside Heights Legal Services, Inc., New York, New York, for Amici Curiae National League of Cities, U.S. Conference of Mayors, and International Municipal Lawyers Association.

Michael R. Lozeau and Richard T. Drury, Lozeau Drury LLP, Oakland, California, for Amici Curiae Conflict of Laws and Foreign Relations Law Scholars.

Gerson H. Smoger, Smoger & Associates P.C., Dallas, Texas; Robert S. Peck, Center for Constitutional Litigation P.C., Washington, D.C.; for Amici Curiae Senators Sheldon Whitehouse, Dianne Feinstein, Richard Blumenthal, Mazie K. Hirono, Edward J. Markey, and Kamala D. Harris.

Seth Davis, Berkeley, California; Ruthanne M. Deutsch and Hyland Hunt, Deutsch Hunt PLLC, Washington, D.C.; for Amici Curiae Legal Scholars.

John W. Keker, Matthew Werdegar, and Dan Jackson, Keker Van Nest & Peters LLP, San Francisco, California; Harold Hongju Koh and Conor Dwyer Reynolds, Rule of Law Clinic, Yale Law School, New Haven, Connecticut; for Amici Curiae Former U.S. Government Officials.

James R. Williams, County Counsel; Greta S. Hansen, Chief Assistant County Counsel; Laura S. Trice, Lead Deputy County Counsel; Tony LoPresti, Deputy County Counsel; Office of County Counsel, County of Santa Clara, San José, California; for Amicus Curiae California State Association of Counties.

Daniel P. Mensher and Alison S. Gaffney, Keller Rohrback L.L.P., Seattle, Washington, for Amici Curiae Robert Brulle, Center for Climate Integrity, Justin Farrell, Benjamin Franta, Stephan Lewandowsky, Naomi Oreskes, Geoffrey Supran, and Union of Concerned Scientists.

Kenneth L. Adams, Adams Holcomb LLP, Washington, D.C.; William A. Rossbach, Rossbach Law PC, Missoula, Montana; for Amici Curiae Mario J. Molina, Michael Oppenheimer, Bob Kopp, Friederike Otto, Susanne C. Moser, Donald J. Wuebbles, Gary Griggs, Peter C. Frumhoff, and Kristina Dahl.

Ian Fein, Natural Resources Defense Council, San Francisco, California; Peter Huffman, Natural Resources Defense Council, Washington, D.C.; for Amicus Curiae Natural Resources Defense Council.

Xavier Becerra, Attorney General; Sally Magnani, Senior Assistant Attorney General; David A. Zonana, Supervising Deputy Attorney General; Erin Ganahl and Heather Leslie, Deputy Attorneys General; Attorney General's Office, Sacramento, California; William Tong, Brian E. Frosh, Keith Ellison, Gurbir S. Grewal, Letitia James, Ellen F. Rosenblum; Peter F. Neronha, Thomas J. Donovan Jr., Robert W. Ferguson, and Karl A. Racine, Attorneys General; for Amici Curiae States of California, Connecticut, Maryland, Minnesota, New Jersey, New York, Oregon, Rhode Island, Vermont, and Washington, and the District of Columbia.

Steven P. Lehotsky, Michael B. Schon, and Jonathan D. Urick, U.S. Chamber Litigation Center, Washington, D.C.; Peter D. Keisler, C. Frederick Beckner III, Ryan C. Morris, and Tobias S. Loss-Eaton, Sidley Austin LLP, Washington, D.C.; Zachary D. Tripp and Lauren E. Morris, Weil Gotshal & Manges LLP, Washington, D.C.; Sarah M. Sternlieb, Weil Gotshal & Manges LLP, New York, New York; for Amicus Curiae Chamber of Commerce of the United States of America.

Corbin K. Barthold and Cory L. Andrews, Washington Legal Foundation, Washington, D.C., for Amicus Curiae Washington Legal Foundation.

Philip S. Goldberg and Christopher E. Appel, Shook Hardy & Bacon LLP, Washington, D.C.; Linda E. Kelly and Peter C. Tolsdorf, Manufacturers' Center for Legal Action, Washington, D.C.; for Amicus Curiae National Association of Manufacturers.

Curtis T. Hill, Jr., Attorney General; Thomas M. Fisher, Solicitor General; Kian J. Hudson, Deputy Solicitor General;

Julia C. Payne and Robert Rowlett, Deputy Attorneys General; Office of the Attorney General, Indianapolis, Indiana; Steve Marshall, Kevin G. Clarkson, Leslie Rutledge, Christopher M. Carr, Derek Schmidt, Jeff Landry, Eric Schmitt, Tim Fox, Doug Peterson, Wayne Stenehjem, Dave Yost, Mike Hunter, Alan Wilson, Jason R. Ravnsborg, Ken Paxton, Sean Reyes, Patrick Morrissey, and Bridget Hill, Attorneys General; for Amici Curiae States of Indiana, Alabama, Alaska, Arkansas, Georgia, Kansas, Louisiana, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming.

Raymond A. Cardozo and David J. de Jesus, Reed Smith LLP, San Francisco, California; Richard A. Epstein, Chicago, Illinois; for Amici Curiae Professors Richard A. Epstein, Jason Scott Johnston, and Henry N. Butler.

**ORDER**

The opinion filed on May 26, 2020, appearing at 960 F.3d 570 (9th Cir. 2020), is amended as follows:

At page 585, footnote 12, replace:

<The district court requested supplemental briefing on how the concept of the "'navigable waters of the United States' . . . relates to the removal jurisdiction issue in th[e] case." As the Cities pointed out, however, the Energy Companies waived any argument related to admiralty jurisdiction by not invoking it in their notices of removal. *See* 28 U.S.C. § 1446(a) (notice of removal must "contain[] a short and plain statement of the grounds for removal"); *ARCO*, 213 F.3d at 1117 (notice of removal "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period" (citation omitted)); *O'Halloran*, 856 F.2d at 1381 (same). Thus, the district court should confine its analysis to the bases for jurisdiction asserted in the notices of removal.>

with

<The Energy Companies identified six alternate bases for subject-matter jurisdiction in their notices of removal. *See supra* note 2. On appeal, the Energy Companies identified admiralty jurisdiction, 28 U.S.C. § 1333, as a seventh alternate basis for jurisdiction. As the Cities point out, however, the Energy Companies waived any argument related to admiralty jurisdiction by not invoking it in their notices of removal. *See* 28 U.S.C. § 1446(a) (notice of removal must "contain[] a short and plain statement of the grounds for removal"); *ARCO*, 213 F.3d at 1117 (notice of removal

"cannot be amended to add a separate basis for removal jurisdiction after the thirty day period" (citation omitted)); *O'Halloran*, 856 F.2d at 1381 (same).  Because the deadline for amending the notices of removal has passed, the Energy Companies may not rely on admiralty jurisdiction as a basis for removal on remand.  Moreover, the Energy Companies' related argument that there is federal-question jurisdiction, 28 U.S.C. § 1331, because "the instrumentality of the alleged harm is the navigable waters of the United States," fails for the reasons set forth in Part II, *supra*.>

***

With this amendment, the panel has unanimously voted to deny Defendants-Appellees' Petition for Panel Rehearing and/or Rehearing En Banc (ECF No. 175).

The full court has been advised of the Petition for Panel Rehearing and/or Rehearing En Banc, and no Judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The Petition for Panel Rehearing and/or Rehearing En Banc is **DENIED**.  No further petitions for rehearing or rehearing en banc may be filed.

**OPINION**

IKUTA, Circuit Judge:

Two California cities brought actions in state court alleging that the defendants' production and promotion of

fossil fuels is a public nuisance under California law, and the defendants removed the complaints to federal court. We hold that the state-law claim for public nuisance does not arise under federal law for purposes of 28 U.S.C. § 1331, and we remand to the district court to consider whether there was an alternative basis for subject-matter jurisdiction.

I

In September 2017, the city attorneys for the City of Oakland and the City and County of San Francisco filed complaints in California state court asserting a California public-nuisance claim against five of the world's largest energy companies: BP p.l.c., Chevron Corporation, ConocoPhillips, Exxon Mobil Corporation, and Royal Dutch Shell plc.[1] The complaints claim that the defendants are liable for causing or contributing to a public nuisance under California law. *See* Cal. Civ. Code §§ 3479, 3480, 3491, 3494; Cal. Civ. Proc. Code § 731. We refer to the plaintiffs collectively as the "Cities" and to the defendants collectively as the "Energy Companies."

According to the complaints, the Energy Companies' "production and promotion of massive quantities of fossil fuels" caused or contributed to "global warming-induced sea level rise," leading to coastal flooding of low-lying shorelines, increased shoreline erosion, salt-water impacts on the Cities' wastewater treatment systems, and interference with stormwater infrastructure, among other injuries. The

---

[1] Under California law, a city attorney may bring an action to abate a public nuisance "in the name of the people of the State of California," Cal. Civ. Proc. Code § 731, and so the complaints were brought in the name of the people of the State of California, acting by and through the city attorneys of Oakland and San Francisco.

complaints further allege that the Cities are incurring costs to abate these harms and expect the injuries will become more severe over the next 80 years. Accordingly, the Cities seek an order of abatement requiring the Energy Companies to fund a "climate change adaptation program" for Oakland and San Francisco "consisting of the building of sea walls, raising the elevation of low-lying property and buildings and building such other infrastructure as is necessary for [the Cities] to adapt to climate change."

In October 2017, the Energy Companies removed the Cities' complaints to federal court. The Energy Companies identified seven different grounds for subject-matter jurisdiction in their notices of removal, including that the Cities' public-nuisance claim was governed by federal common law because the claim implicates "uniquely federal interests."[2] After removal, the cases were assigned to the same district judge, Judge William H. Alsup.[3]

_____

[2] The notice of removal also asserted that the complaints are removable because the Cities' claim: (1) raises disputed and substantial federal issues, *see Grable & Sons Metal Prods., Inc v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005); (2) is "completely preempted" by federal law; (3) arises out of operations on the outer Continental Shelf, *see* 43 U.S.C. § 1349(b); (4) implicates actions that the Energy Companies took "pursuant to a federal officer's directions," *see* 28 U.S.C. § 1442(a)(1); (5) arose on "federal enclaves"; and (6) is related to bankruptcy cases, *see* 28 U.S.C. §§ 1334(b), 1452(a).

[3] Other cities and counties in California filed similar cases against the Energy Companies and a number of other energy companies. Those cases were filed in California state court and removed to federal court, where they were assigned to Judge Vince G. Chhabria. Judge Chhabria remanded those cases to state court based on a lack of subject-matter jurisdiction. *See Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 939 (N.D. Cal. 2018). We resolve the appeal from that remand order in a concurrently filed opinion. *See Cty. of San Mateo v. Chevron Corp.*,

The Cities moved to remand the cases to state court on the ground that the district court lacked subject-matter jurisdiction. The district court denied the motion, concluding that it had federal-question jurisdiction under 28 U.S.C. § 1331 because the Cities' claim was "necessarily governed by federal common law." The district court reasoned that the Cities' public-nuisance claim raised issues relating to "interstate and international disputes implicating the conflicting rights of States or . . . relations with foreign nations" and that these issues had to be resolved pursuant to a uniform federal standard.

In response to the district court's ruling, the Cities amended their complaints to include a public-nuisance claim under federal common law.[4] The amended complaints stated that the federal claim was added "to conform to the [district court's] ruling" and that the Cities "reserve[d] all rights with respect to whether jurisdiction [is] proper in federal court." The Energy Companies moved to dismiss the amended complaints.

In June 2018, the district court held that the amended complaints failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The district court first determined that it would be inappropriate to extend federal common law to provide relief because "federal courts should exercise great caution before fashioning federal common law in areas touching on foreign affairs," and the Cities' claims

—— F.3d —— (9th Cir. 2020).

[4] The Cities added the City of Oakland and the City and County of San Francisco as plaintiffs because federal law, unlike California law, does not allow a city attorney to bring a public-nuisance action in federal court in the name of the people of the State of California.

"implicate[d] the interests of countless governments, both foreign and domestic." The district court then dismissed the state-law claim on the ground that it "must stand or fall under federal common law." The district court therefore dismissed the amended complaints for failure to state a claim. On the same day, the district court requested a joint statement from the parties regarding whether it was necessary to reach the pending motions to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). After BP, ConocoPhillips, Exxon, and Shell requested a ruling on the issue, the district court ruled that it lacked personal jurisdiction over those defendants and dismissed them. The district court then entered judgments in favor of the Energy Companies and against the Cities.

The Cities appeal the denial of their motions to remand, the dismissal of their complaints for failure to state a claim, and the district court's personal-jurisdiction ruling. We have jurisdiction under 28 U.S.C. § 1291. We review questions of statutory construction and subject-matter jurisdiction de novo. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1315 (9th Cir. 1998). "[S]tatutes extending federal jurisdiction . . . are narrowly construed so as not to reach beyond the limits intended by Congress." *Phillips v. Osborne*, 403 F.2d 826, 828 (9th Cir. 1968).

II

We first consider the Cities' argument that the district court erred in determining that it had federal-question jurisdiction under 28 U.S.C. § 1331. In undertaking this analysis, we consider only "the pleadings filed at the time of removal without reference to subsequent amendments."

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1085 n.1 (9th Cir. 2009) (citation omitted).

A

Federal-question jurisdiction stems from a congressional enactment, 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The scope of this statutory grant of jurisdiction is a matter of congressional intent, and the Supreme Court has determined that Congress conferred "a more limited power" than the full scope of judicial power accorded in the Constitution. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986).[5] The general rule, referred to as the "well-pleaded complaint rule," is that a civil action arises under federal law for purposes of § 1331 when a federal question appears on the face of the complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because federal jurisdiction "depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims," *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000), "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's

---

[5] Article III of the Constitution provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2. "[T]he constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action." *Merrell Dow Pharm.*, 478 U.S. at 807 (quoting *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 823 (1824)).

complaint, and even if both parties concede that the federal defense is the only question truly at issue," *Caterpillar*, 482 U.S. at 393. Therefore, as the "master of the claim," the plaintiff can generally "avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392.

There are a few exceptions to the well-pleaded-complaint rule, however.

1

First, in a line of cases, beginning with *Northern Pacific Railway Co. v. Soderberg*, 188 U.S. 526 (1903), and extending most recently to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Supreme Court has recognized a "special and small category" of state-law claims that arise under federal law for purposes of § 1331 "because federal law is 'a necessary element of the . . . claim for relief.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (citation omitted). Only a few cases have fallen into this "slim category," *id.* at 701, including: (1) a series of quiet-title actions from the early 1900s that involved disputes as to the interpretation and application of federal law, *see Hopkins v. Walker*, 244 U.S. 486, 489 (1917) (federal jurisdiction was proper because "it [was] plain" that the case involved "a controversy respecting the construction and effect of" federal mining laws); *Wilson Cypress Co. v. Pozo*, 236 U.S. 635, 642–43 (1915) (federal jurisdiction was proper because the plaintiffs relied "upon [a] treaty with Spain and laws of the United States . . . to defeat [the] defendant's claim of title"); *Soderberg*, 188 U.S. at 528 (federal jurisdiction was proper because the plaintiff's claim "depend[ed] upon the proper construction of an act of Congress"); (2) a shareholder

action seeking to enjoin a Missouri corporation from investing in federal bonds on the ground that the federal act pursuant to which the bonds were issued was unconstitutional, *see Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 201 (1921); and (3) a state-quiet title action claiming that property had been unlawfully seized by the Internal Revenue Service (IRS) because the notice of the seizure did not comply with the Internal Revenue Code, *see Grable*, 545 U.S. at 311. In other cases where parties have sought to invoke federal jurisdiction for state-law claims, the Court has concluded that jurisdiction was lacking, even when the claims were premised on violations of federal law, *see Merrell Dow Pharm.*, 478 U.S. at 805–07; *Moore v. Chesapeake & Ohio Ry. Co.*, 291 U.S. 205, 210 (1934), required remedies "contemplated by a federal statute," *Empire Healthchoice*, 547 U.S. at 690, or required the interpretation and application of a federal statute in a hypothetical case underlying a legal malpractice claim, *see Gunn v. Minton*, 568 U.S. 251, 259 (2013).

The Court has articulated a test for deciding when this exception to the well-pleaded-complaint rule applies. As explained in *Grable* and later in *Gunn*, federal jurisdiction over a state-law claim will lie if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 314). All four requirements must be met for federal jurisdiction to be proper. *Id.*

The Court has often focused on the third requirement, the question whether a case "turn[s] on substantial questions of federal law." *Grable*, 545 U.S. at 312. This inquiry focuses

on the importance of a federal issue "to the federal system as a whole." *Gunn*, 568 U.S. at 260. An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, *see Smith*, 255 U.S. at 201; *Hopkins*, 244 U.S. at 489–90, or when it challenges the functioning of a federal agency or program, *see Grable*, 545 U.S. at 315 (holding there was federal jurisdiction to address an action challenging the IRS's ability to satisfy tax delinquencies by seizing and disposing of property); *cf. Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 911 (7th Cir. 2007) (holding that federal jurisdiction was lacking because, among other reasons, the plaintiffs did not "challenge the validity of any federal agency's or employee's action"). Moreover, an issue may qualify as substantial when it is a "pure issue of law," *Empire Healthchoice*, 547 U.S. at 700 (citation omitted), that directly draws into question "the constitutional validity of an act of Congress," *Smith*, 255 U.S. at 201, or challenges the actions of a federal agency, *see Grable*, 545 U.S. at 310, and a ruling on the issue is "both dispositive of the case and would be controlling in numerous other cases," *Empire Healthchoice*, 547 U.S. at 700 (citing *Grable*, 545 U.S. at 313). By contrast, a federal issue is not substantial if it is "fact-bound and situation-specific," *see id.* at 701, or raises only a hypothetical question unlikely to affect interpretations of federal law in the future, *see Gunn*, 568 U.S. at 261. A federal issue is not substantial merely because of its novelty, *see id.* at 262, or because it will further a uniform interpretation of a federal statute, *see Merrell Dow Pharm.*, 478 U.S. at 815–16.

2

A second exception to the well-pleaded-complaint rule is referred to as the "artful-pleading doctrine." This doctrine

"allows removal where federal law completely preempts a plaintiff's state-law claim," *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998), meaning that "the pre-emptive force of the statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). To have this effect, a federal statute must "provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

The Supreme Court has identified only three statutes that meet this criteria: (1) § 301 of the Labor Management Relations Act (the LMRA), 29 U.S.C. § 185, which "displace[s] entirely any state cause of action 'for violation of contracts between an employer and a labor organization,'" *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (citation omitted); (2) § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a), which preempts state-law claims asserting improper processing of a claim for benefits under an employee-benefit plan regulation by ERISA, *Metro. Life Ins.*, 481 U.S. at 65–66; and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86, which provide the "exclusive cause of action for usury claims against national banks," *Beneficial Nat'l Bank*, 539 U.S. at 9. In light of these cases, we have held that complete preemption for purposes of federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action. *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (citing *Beneficial Nat'l Bank*, 539 U.S. at 8); *accord*

*Hunter v. United Van Lines*, 746 F.2d 635, 642–43 (9th Cir. 1984).

B

We now consider whether the district court erred in concluding it had jurisdiction over the Cities' complaints under § 1331. At the time of removal, each complaint asserted only a single cause of action for public nuisance under California law. Under the well-pleaded-complaint rule, the district court lacked federal-question jurisdiction unless one of the two exceptions to the well-pleaded-complaint rule applies.

1

We first consider whether the Cities' state-law claim for public nuisance falls within the "special and small category" of state-law claims that arise under federal law. *Empire Healthchoice*, 547 U.S. at 699. The gist of the Cities' claim is that the Energy Companies' production and promotion of fossil fuels has resulted in rising sea levels, causing harm to the Cities. Under the Court's test, we must determine whether, by virtue of this claim, a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 314).

Even assuming that the Cities' allegations could give rise to a cognizable claim for public nuisance under federal common law, *cf. Am. Elec. Power Co. v. Connecticut ("AEP")*, 564 U.S. 410, 423 (2011), the district court did not have jurisdiction under § 1331 because the state-law claim for

public nuisance fails to raise a substantial federal question. Adjudicating the claim does not require resolution of a substantial question of federal law: the claim neither requires an interpretation of a federal statute, *cf. Grable*, 545 U.S. at 310; *Hopkins*, 244 U.S. at 489, nor challenges a federal statute's constitutionality, *cf. Smith*, 255 U.S. at 199. The Energy Companies also do not identify a legal issue necessarily raised by the claim that, if decided, will "be controlling in numerous other cases." *Empire Healthchoice*, 547 U.S. at 700 (citing *Grable*, 545 U.S. at 313). Indeed, it is not clear that the claim requires an interpretation or application of federal law at all, because the Supreme Court has not yet determined that there is a federal common law of public nuisance relating to interstate pollution, *see AEP*, 564 U.S. at 423, and we have held that federal public-nuisance claims aimed at imposing liability on energy producers for "acting in concert to create, contribute to, and maintain global warming" and "conspiring to mislead the public about the science of global warming," *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 854 (9th Cir. 2012), are displaced by the Clean Air Act, *id.* at 858.

Rather than identify a legal issue, the Energy Companies suggest that the Cities' state-law claim implicates a variety of "federal interests," including energy policy, national security, and foreign policy.[6]  The question whether the Energy Companies can be held liable for public nuisance based on production and promotion of the use of fossil fuels and be required to spend billions of dollars on abatement is no doubt an important policy question, but it does not raise a

---

[6] We do not address whether such interests may give rise to an affirmative federal defense because such a defense is not grounds for federal jurisdiction. *See, e.g.*, *Caterpillar*, 482 U.S. at 393.

substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331. *Cf. Empire Healthchoice*, 547 U.S. at 701 (holding that the federal government's "overwhelming interest in attracting able workers to the federal workforce" and "in the health and welfare of the federal workers upon whom it relies to carry out its functions" was insufficient to transform a "state-court-initiated tort litigation" into a "federal case"). Finally, evaluation of the Cities' claim that the Energy Companies' activities amount to a public nuisance would require factual determinations, and a state-law claim that is "fact-bound and situation-specific" is not the type of claim for which federal-question jurisdiction lies. *Id.*; *see also Bennett*, 484 F.3d at 910 (holding that federal jurisdiction was lacking when the case required "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law").

Given that the Cities' state-law claim does not raise a substantial federal issue, the claim does not fit within the "slim category *Grable* exemplifies," *Empire Healthchoice*, 547 U.S. at 701, and we need not consider the remaining requirements articulated in *Grable*.

2

The Energy Companies also argue that the Cities' state-law claim for public nuisance arises under federal law because it is completely preempted by the Clean Air Act. This argument also fails.

The Clean Air Act is not one of the three statutes that the Supreme Court has determined has extraordinary preemptive force. *See Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858,

862 (9th Cir. 2003). Rather, the Supreme Court has left open the question whether the Clean Air Act preempts a state-law nuisance claim under ordinary preemption principles. *AEP*, 564 U.S. at 429 ("In light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state [nuisance] lawsuit depends, *inter alia*, on the preemptive effect of the federal Act."). Nor does the Clean Air Act meet either of the two requirements for complete preemption. *See, e.g.*, *Hansen*, 902 F.3d at 1057.

First, the statutory language does not indicate that Congress intended to preempt "every state law cause of action within the scope" of the Clean Air Act. *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1058 (9th Cir. 2007); *see also Beneficial Nat'l Bank*, 539 U.S. at 11 (holding that federal law provides the exclusive cause of action for usury claims against national banks such that there is "no such thing as a state-law claim of usury against a national bank"). Rather, the statute indicates that Congress intended to preserve state-law causes of action pursuant to a saving clause, 42 U.S.C. § 7416,[7] which "makes clear that states retain the right to 'adopt or enforce' common law standards that apply to emissions" and preserves "[s]tate common law standards . . . against preemption," *Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 690, 691 (6th Cir. 2015) (citation

---

[7] Section 7416 provides, "Except as otherwise provided in [statutory exceptions not applicable here] nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution," except that no state or local government may "adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation" provided for by the Clean Air Act and its implementing plan. 42 U.S.C. § 7416.

omitted). When a federal statute has a saving clause of this sort, Congress did not intend complete preemption, because "there would be nothing . . . to 'save'" if Congress intended to preempt every state cause of action within the scope of the statute. *In re NOS*, 495 F.3d at 1058. Moreover, the Clean Air Act's statement that "air pollution control at its source is the primary responsibility of States and local governments," 42 U.S.C. § 7401(a)(3), weighs against a conclusion that Congress intended to displace state-law causes of action.

Second, the Clean Air Act does not provide the Cities with a "substitute[]" cause of action, *Hansen*, 902 F.3d at 1057, that is, a cause of action that would allow the Cities to "remedy the wrong [they] assert[] [they] suffered," *Hunter*, 746 F.2d at 643. While the Clean Air Act allows a plaintiff to file a petition to seek judicial review of certain actions taken by the Environmental Protection Agency, 42 U.S.C. § 7607(b)(1), it does not provide a federal claim or cause of action for nuisance caused by global warming. Moreover, the Clean Air Act's citizen-suit provision, § 7604, permits actions for violations of the Clean Air Act, but it does not provide the Cities with a free-standing cause of action for nuisance that allows for compensatory damages, *see* § 7604(a); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 150 & n.3 (4th Cir. 1994). Thus, the Clean Air Act satisfies neither requirement for complete preemption.

\*\*\*

In sum, because neither exception to the well-pleaded-complaint rule applies to the Cities' original complaints, the district court erred in holding that it had jurisdiction under 28 U.S.C. § 1331 at the time of removal.

## III

Although the district court lacked jurisdiction under 28 U.S.C. § 1331 at the time of removal, that does not end our inquiry. This is because the Cities cured any subject-matter jurisdiction defect by amending their complaints to assert a claim under federal common law. *See Pegram v. Herdrich*, 530 U.S. 211, 215 n.2 (2000) (holding that there was "jurisdiction regardless of the correctness of the removal" because the "amended complaint alleged ERISA violations, over which the federal courts have jurisdiction"); *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1070 (9th Cir. 2019); *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 949 & n.6 (9th Cir. 2014).[8] Thus, at the time the district court dismissed the Cities' complaints, there was subject-matter jurisdiction because the operative pleadings asserted a claim "arising under" federal common law. 28 U.S.C. § 1331. Based on this cure, the Energy Companies raise two arguments as to why we can affirm the district court's dismissals, even if there was no subject-matter jurisdiction at the time of removal.

First, the Energy Companies argue that the Cities waived the argument that the district court erred in refusing to remand the cases to state court because the Cities amended their complaints to assert a claim under federal common law. We disagree. The Cities moved for remand and stated, in their amended complaints, that they included a federal claim "to conform to the [district court's] ruling" and that they

---

[8] We reject the Cities' argument that any subject-matter jurisdiction defect was not cured because they acted involuntarily when they added a federal claim to their complaints. Once a plaintiff asserts a federal claim, regardless whether the plaintiff does so under protest, the district court has subject-matter jurisdiction. *Cf. Pegram*, 530 U.S. at 215 n.2.

"reserve[d] all rights with respect to whether jurisdiction is proper in federal court." This was sufficient to preserve the argument that removal was improper. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73–74 (1996); *Singh*, 925 F.3d at 1066.

Second, the Energy Companies argue that any impropriety with respect to removal can be excused because "considerations of finality, efficiency, and economy," *Lewis*, 519 U.S. at 75, weigh in favor of affirming the district court's dismissal of the Cities' complaints. Again, we disagree.

Section 1441(a) requires that a case be "fit for federal adjudication at the time [a] removal petition is filed." *Id.* at 73.[9] Because a party violates § 1441(a) if it removes a case that is not fit for federal adjudication, a district court generally must remand the case to state court, even if subsequent actions conferred subject-matter jurisdiction on the district court. *See, e.g.*, *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1380–81 (9th Cir. 1988) (directing a district court to remand a complaint to state court even though the plaintiff amended her complaint to assert violations of federal law after the district court denied a motion to remand).

---

[9] Section 1441(a) provides, in relevant part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

There is, however, a narrow exception to this rule that takes into account "considerations of finality, efficiency, and economy." *Singh*, 925 F.3d at 1065 (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 574 (2004)). Specifically, when a jurisdictional defect has been cured after removal and the case has been tried in federal court, a violation of § 1441(a) can be excused if remanding the case to state court would be inconsistent "with the fair and unprotracted administration of justice." *Id.* (quoting *Lewis*, 519 U.S. at 77).

The decision to excuse a violation of § 1441(a) depends on the stage of the underlying proceedings. When a case "has been tried in federal court," "considerations of finality, efficiency, and economy become overwhelming," *Lewis*, 519 U.S. at 75, and in those circumstances, the Supreme Court has refused to "wipe out the adjudication postjudgment" so long as the there was jurisdiction when the district court entered judgment, *id.* at 77; *see also Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972). For instance, in *Lewis*, the Court excused a violation of § 1441(a) when the case was litigated in federal court for over three years, culminating in a six-day jury trial. 519 U.S. at 66–67. "Requiring [remand] after years of litigation," the Court explained, "would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." *Id.* at 76 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836 (1989)). We have extended this reasoning to cases where the district court resolves "state law issues on the merits" at summary judgment. *Singh*, 925 F.3d

at 1071.[10]  For instance, we excused a violation of § 1441(a) when, after extensive motion practice and discovery, the district court granted summary judgment in favor of the defendants.  *Id.* at 1061–62.  We reasoned that the case was sufficiently analogous to one in which there was a trial on the merits and therefore held that "[c]onsiderations of finality, efficiency, and economy" counseled in favor of excusing the violation of § 1441(a).  *Id.* at 1071 (quoting *Lewis*, 519 U.S. at 75).

This reasoning, however, generally will not apply when a district court dismisses a complaint for failure to state a claim under Rule 12(b)(6).  That rule is designed "to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery," the cost of which can be "prohibitive."  *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  "[T]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of . . . [a] claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."  5B Arthur R. Miller et al., *Federal Practice & Procedure* § 1356 (3d ed. 2020).  In contrast, a motion for summary judgment is designed to "test whether there is a genuine issue of material fact" and "often involves the use of pleadings, depositions, answers to interrogatories, and affidavits."  *Id.*

---

[10] We have held that this rule does not apply when we reverse the grant of summary judgment, such that there is no longer a "judgment on the merits."  *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *accord Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 962 (9th Cir. 1998), *abrogated on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001).

Moreover, summary judgment is appropriate only if the "movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), whereas "the usual course of action upon granting a defendant's Rule 12(b)(6) motion is to allow a plaintiff to amend his or her complaint," *Waste Control Specialists, LLC v. Envirocare of Tex., Inc.*, 199 F.3d 781, 786 (5th Cir.), *opinion withdrawn and superseded in part on reh'g*, 207 F.3d 225 (5th Cir. 2000).

In light of these differences, we agree with the Fifth Circuit that a dismissal under Rule 12(b)(6), unlike a grant of summary judgment, is generally "insufficient to forestall an otherwise proper remand." *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 338 (5th Cir. 2014). We have recognized that the "concern for judicial economy" is slight when a case is pending for under a year, the plaintiff engages in no discovery, and the district court dismisses the case "at an early stage, prior to trial on the merits." *Dyer v. Greif Bros.*, 766 F.2d 398, 399, 401 (9th Cir. 1985), *superseded by statute on other grounds as stated in Beeman v. Olson*, 828 F.2d 620, 621 (9th Cir. 1987). A case consumes a "minimum of judicial resources" if it is pending for only a few months before it is dismissed under Rule 12(b)(6). *Waste Control Specialists*, 199 F.3d at 787. Likewise, the Sixth Circuit has recognized that "concerns for judicial economy" are insignificant when dismissal comes "so early in the pleadings stage that there has been minimal investment of the parties' time in discovery or of the court's time in judicial proceedings or deliberations." *Chivas Prods. Ltd. v. Owen*, 864 F.2d 1280, 1286–87 (6th Cir. 1988), *abrogated on other grounds by Tafflin v. Levitt*, 493 U.S. 455, 461 (1990). In short, "considerations of finality, efficiency, and economy" are rarely, if ever, "overwhelming" when a

district court dismisses a case at the pleading stage before the parties have engaged in discovery.[11]

In this case, "considerations of finality, efficiency, and economy" are far from "overwhelming." *Lewis*, 519 U.S. at 75. When the district court entered judgments, the cases had been on its docket for less than a year—just over eight months. The parties engaged in motion practice under Rule 12, and there had been no discovery. Although the district court held hearings and the parties presented a "tutorial" on global warming, that is a relatively modest use of judicial resources as compared to, for example, three years of litigation, culminating in a six-day jury trial. *See id.* at 66–67. Because the district court dismissed these cases at the pleading stage, after they were pending for less than a year and before the parties engaged in discovery, we conclude that "considerations of finality, efficiency, and economy" are not "overwhelming." *Id.* at 75; *see Camsoft Data Sys.*, 756 F.3d at 338; *Waste Control Specialists*, 199 F.3d at 786; *Dyer*, 766 F.2d at 401; *Chivas Prods.*, 864 F.2d at 1286–87. Accordingly, if there was not subject-matter jurisdiction at the time of removal, the cases must proceed in state court.

---

[11] In *Parrino v. FHP, Inc.*, we held that a defendant's failure to comply with a judge-made procedural requirement for removal did not warrant reversal of a dismissal under Rule 12(b)(6) and "remand of the matter to state court." 146 F.3d 699, 703 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego*, 443 F.3d at 681. But *Parrino* is not applicable when a case is removed in violation of § 1441(a), resulting in a "statutory defect" with respect to removal. *Grupo Dataflux*, 541 U.S. at 574.

IV

The district court did not address the alternative bases for removal asserted in the Energy Companies' notices of removal. And we generally do not consider issues "not passed upon below." *Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union, Alaska Longshore Div., Unit 60*, 721 F.3d 1147, 1157 (9th Cir. 2013) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Accordingly, we remand these cases to the district court to determine whether there was an alternative basis for jurisdiction.[12] If there was not, the cases should be remanded to state court.[13] This panel will

---

[12] The Energy Companies identified six alternate bases for subject-matter jurisdiction in their notices of removal. *See supra* note 2. On appeal, the Energy Companies identified admiralty jurisdiction, 28 U.S.C. § 1333, as a seventh alternate basis for jurisdiction. As the Cities point out, however, the Energy Companies waived any argument related to admiralty jurisdiction by not invoking it in their notices of removal. *See* 28 U.S.C. § 1446(a) (notice of removal must "contain[] a short and plain statement of the grounds for removal"); *ARCO*, 213 F.3d at 1117 (notice of removal "cannot be amended to add a separate basis for removal jurisdiction after the thirty day period" (citation omitted)); *O'Halloran*, 856 F.2d at 1381 (same). Because the deadline for amending the notices of removal has passed, the Energy Companies may not rely on admiralty jurisdiction as a basis for removal on remand. Moreover, the Energy Companies' related argument that there is federal-question jurisdiction, 28 U.S.C. § 1331, because "the instrumentality of the alleged harm is the navigable waters of the United States," fails for the reasons set forth in Part II, *supra*.

[13] We do not reach the question whether the district court lacked personal jurisdiction over four of the defendants. If, on remand, the district court determines that the cases must proceed in state court, the Cities are free to move the district court to vacate its personal-jurisdiction ruling. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587–88 (1999) (stating that in most instances "expedition and sensitivity to state courts' coequal stature should impel [a] federal court to dispose of

retain jurisdiction for any subsequent appeals arising from these cases.

**VACATED AND REMANDED.**[14]

---

[subject-matter jurisdiction] issue[s] first"); *Cerner Middle E. Ltd. v. Belbadi Enters. LLC*, 939 F.3d 1009, 1014 (9th Cir. 2019) (holding that the case should be remanded to state court based on a lack of subject-matter jurisdiction and declining to reach the issue of personal jurisdiction); *Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 994–95 (9th Cir. 2004).

[14] Each party shall bear its own costs on appeal.