**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JACKIE SALDANA; CELIA SALDANA; RICARDO SALDANA, JR.; MARIA SALDANA, as individuals and as successors and heirs to Ricardo Saldana, deceased,

*Plaintiffs-Appellees*,

v.

GLENHAVEN HEALTHCARE LLC, a California corporation; CARAVAN OPERATIONS CORP., a California corporation; MATTHEW KARP, an individual; BENJAMIN KARP, an individual,

*Defendants-Appellants.*

No. 20-56194

D.C. No. 2:20-cv-05631-FMO-MAA

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted October 21, 2021
Pasadena, California

Filed February 22, 2022

Before:  Ryan D. Nelson and Lawrence VanDyke, Circuit Judges, and Karen E. Schreier,* District Judge.

Opinion by Judge Schreier

## SUMMARY**

### Federal Subject Matter Jurisdiction

The panel affirmed the district court's order remanding a removed case to state court for lack of federal subject matter jurisdiction.

Relatives of Ricardo Saldana, who allegedly died from COVID-19 at Glenhaven Healthcare nursing home, sued Glenhaven and other defendants in California state court, alleging state-law causes of action based on the allegation that Glenhaven failed to adequately protect Saldana. Glenhaven removed the case to federal court.

Affirming the district court's order granting plaintiffs' motion to remand the case to state court, the panel rejected Glenhaven's argument that the district court had three grounds for federal jurisdiction. First, the panel held that the district court lacked jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442, because Glenhaven did not act under a federal officer or agency's directions when it

---

* The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

complied with mandatory directives to nursing homes from the Centers for Medicare and Medicaid Services, the Centers for Disease Control and Prevention, and the Department of Health and Human Services. Glenhaven's status as a critical infrastructure entity did not establish that it acted as a federal officer or agency, or that it carried out a government duty.

Second, the panel held that plaintiffs' claims were not completely preempted by the Public Readiness and Emergency Preparedness Act, which provides immunity from suit when the HHS Secretary determines that a threat to health constitutes a public health emergency, but provides an exception to this immunity for an exclusive federal cause of action for willful misconduct. In March 2020, the Secretary issued a declaration under the PREP Act "to provide liability immunity for activities related to medical countermeasures against COVID-19." The panel held that the HHS Office of General Counsel's Advisory Opinion on complete preemption was not entitled to *Chevron* deference because it was an opinion on federal court jurisdiction. Instead, the panel applied the two-part test set forth in *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020). The panel concluded that in enacting the PREP Act, Congress did not intend to displace the non-willful misconduct claims brought by plaintiffs related to the public health emergency, nor did it provide substitute causes of action for plaintiffs' claims. Thus, the federal statutory scheme was not so comprehensive that it entirely supplanted state law causes of action.

Third, the panel held that the district court did not have jurisdiction under the embedded federal question doctrine, under which federal jurisdiction over a state law claim will lie if a federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in federal court

without disrupting the federal-state balance approved by Congress.

## COUNSEL

Lann G. McIntyre (argued), Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Kathleen M. Walker, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; for Defendants-Appellants.

Adam R. Pulver (argued), Allison M. Zieve, and Scott L. Nielson, Public Citizen Litigation Group, Washington, D.C.; Scott C. Glovsky, Law Offices of Scott C. Glovsky, Claremont, California; for Plaintiffs-Appellees.

Mark E. Reagan and Jeffrey Lin, Hooper Lundy & Bookman P.C., San Francisco, California, for Amici Curiae California Association of Health Facilities and American Health Care Association.

Eric M. Carlson, Justice in Aging, Los Angeles, California, for Amicus Curiae Justice in Aging.

## OPINION

SCHREIER, District Judge:

Glenhaven Healthcare LLC, Caravan Operations Corp., Matthew Karp, and Benjamin Karp (collectively, Glenhaven) appeal the district court's order remanding this case to state court for lack of federal subject matter jurisdiction. We have jurisdiction under 28 U.S.C. § 1447(d), and affirm.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ricardo Saldana was a resident of Glenhaven Healthcare nursing home from 2014 to 2020. Saldana died at the Glenhaven nursing home on April 13, 2020, allegedly from COVID-19. In June 2020, four of Saldana's relatives, Jackie Saldana, Celia Saldana, Ricardo Saldana, Jr., and Maria Saldana (the Saldanas), sued Glenhaven in California Superior Court for Los Angeles County. The Saldanas allege that Glenhaven failed to adequately protect Ricardo Saldana from the COVID-19 virus. The complaint states four state-law causes of action: elder abuse, willful misconduct, custodial negligence, and wrongful death.

Glenhaven removed the case to the United States District Court for the Central District of California in June 2020, and the Saldanas moved to remand the case to state court. The district court found that it did not have subject matter jurisdiction to hear the case and granted the Saldanas' motion to remand. Glenhaven appeals, arguing that the district court has three independent grounds for federal

---

[1] We also **GRANT** the pending motions for judicial notice. Docket 18; Docket 22.

jurisdiction: federal officer removal, complete preemption of state law, and the presence of an imbedded federal question. We agree with the district court and affirm.

## II. STANDARD OF REVIEW

We review questions of statutory construction and subject matter jurisdiction de novo. *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020). When the federal officer removal statute, 28 U.S.C. § 1442, is one ground for removal, § 1447(d) permits appellate review of a district court's entire remand order. *BP P.L.C. v. Mayor of Balt.*, 141 S. Ct. 1532, 1538 (2021). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III. DISCUSSION

## A. Federal Officer Removal

### 1. Legal Standard

Under 28 U.S.C. § 1442(a)(1), the federal officer removal statute, an action commenced in state court may be removed to federal court when it is "against or directed to . . . : [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." The "basic purpose" of the statute "is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Government acting within the scope of their authority." *Watson v. Philip*

*Morris Cos.*, *Inc.*, 551 U.S. 142, 150 (2007) (cleaned up). The federal officer removal statute is to be "liberally construed," but "a liberal construction nonetheless can find limits in [the statute's] language, context, history, and purposes." *Id.* at 147.

To remove a state court action under the federal officer removal statute, a defendant must establish that "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020) (quoting *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018)). Here, the parties do not dispute that each defendant is a "person" under the statute. *See* 1 U.S.C. § 1 ("person" includes "corporations, companies, associations, firms, partnerships . . . as well as individuals"). Defendants seeking removal "still bear the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction are factually supported." *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1000 (9th Cir. 2021) (cleaned up).

### 2. Whether Glenhaven Acted Under a Federal Officer's Directions

To determine whether there was a causal nexus between Glenhaven's actions and the Saldanas' claims, the court first considers whether Glenhaven's actions were taken "pursuant to a federal officer's directions," *Stirling*, 955 F.3d at 800, or while "acting under that officer." 28 U.S.C. § 1442(a)(1). A person or entity who acts under a federal officer or agency is one "'who lawfully assist[s]' a federal officer 'in the performance of his official duty'" and is "authorized to act with or for [federal officers or agents] in

affirmatively executing duties under ... federal law."
*Watson*, 551 U.S. at 143 (cleaned up). The relationship
between a federal officer or agency and a person or entity
"acting under" the officer or agency "typically involves
subjection, guidance, or control." *Id.* at 152. But "simply
*complying*" with a law or regulation is not enough to "bring
a private person within the scope of the statute." *Id.* In
*Watson* the Supreme Court stated:

> A private firm's compliance (or
> noncompliance) with federal laws, rules, and
> regulations does not by itself fall within the
> scope of the statutory phrase "acting under" a
> federal "official." And that is so even if the
> regulation is highly detailed and even if the
> private firm's activities are highly supervised
> and monitored.

*Id.* at 153. "The upshot is that a highly regulated firm cannot
find a statutory basis for removal in the fact of federal
regulation alone." *Id.*

Glenhaven argues that the federal government
"conscript[ed] . . . private entities like Glenhaven to join in
the fight [against COVID-19] through detailed and specific
mandatory directives to nursing homes on the use and
allocation of PPE, the administration of COVID-19 testing,
intervention protocols, and virtually every other aspect of the
operations of nursing homes during the pandemic." Though
it acknowledges that compliance with federal laws,
regulations, and rules does not "by itself" bring a defendant
under the federal officer removal statute, Glenhaven claims
that the "unprecedent[ed] circumstances" of COVID-19
resulted in federal directives and operational control

amounting to more than compliance with government regulations.

Glenhaven points to memoranda it received from the Centers for Medicare and Medicaid Services (CMS), the Centers for Disease Control and Prevention (CDC), and the Department of Health and Human Services (HHS) during the COVID-19 pandemic to show that the "federal government and its agencies . . . became hyper-involved in the operational activities of nursing facilities in response to the pandemic." But the agency communications Glenhaven relies on show nothing more than regulations and recommendations for nursing homes, covering topics such as COVID-19 testing, use and distribution of personal protective equipment, and best practices to reduce transmission within congregate living environments. For example, one CMS memo identifies what healthcare staff "should" do in response to the pandemic, and it states what CMS "expects," "encourages," "advise[s]," and "recommend[s]." Similarly, a CDC communication cited by Glenhaven identifies "recommendations" and steps that healthcare centers "should" take. Another memorandum published by the California Department of Public Health states that the agency "ensure[s] compliance with state licensing laws and federal certification regulations" on behalf of CMS. *Licensing and Certification Program*, Cal. Dep't of Pub. Health (Dec. 17, 2020), https://www.cdph.ca.gov/Progr ams/CHCQ/LCP/Pages/LandCProgramHome.aspx. Without more than government regulations and recommendations, Glenhaven has failed to establish that it was "acting under" a federal official, and it has not identified a duty of the federal government that it performed.

Glenhaven also claims that, as a nursing home, its designation as part of the national critical infrastructure necessarily means that it acted on behalf of a federal official

or that it carried out a government duty. The Saldanas do not dispute that nursing homes, including Glenhaven, are part of the nation's critical infrastructure. Glenhaven relies on a memorandum from the Cybersecurity and Infrastructure Security Agency (CISA) stating that the list of critical infrastructure workers was developed as "guidance" to "help state and local jurisdictions and the private sector identify and manage their essential workforce while responding to COVID-19." *CISA Releases Guidance on Essential Critical Infrastructure Workers During COVID-19*, Cybersecurity & Infrastructure Sec. Agency (Oct. 25, 2021), https://www.cisa.gov/news/2020/03/19/cisa-release s-guidance-essential-critical-infrastructure-workers-during -covid-19. Notably, the memorandum also states that the national critical infrastructure list "does not impose any mandates on state or local jurisdictions or private companies," such as Glenhaven. *Id.*

"It cannot be that the federal government's mere designation of an industry as important—or even critical— is sufficient to federalize an entity's operations and confer federal jurisdiction." *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 740 (8th Cir. 2021); *see also Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 406 (3d Cir. 2021). Thus, Glenhaven's status as a critical infrastructure entity does not establish that it acted under a federal officer or agency, or that it carried out a government duty.

Glenhaven has failed to substantiate its claims that it was conscripted to assist a federal officer or agency in performance of a government duty or that it was authorized to act for a federal officer. All that Glenhaven has demonstrated is that it operated as a private entity subject to government regulations, and that during the COVID-19 pandemic it received additional regulations and

recommendations from federal agencies. Thus, Glenhaven was not "acting under" a federal officer or agency as contemplated by the federal officer removal statute. And because Glenhaven did not act under a federal officer, there is no causal nexus that allows removal under 28 U.S.C. § 1442.

## B.  Preemption Under the PREP Act

### 1.  Legal Standard

Glenhaven argues that this case was properly removed to federal court because the Saldanas' claims are completely preempted by the Public Readiness and Emergency Preparedness (PREP) Act, 42 U.S.C. §§ 247d-6d, 247d-6e. "Complete preemption is 'really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace *any* state-law claim.'" *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013) (emphasis added) (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009)). Put another way, "[c]omplete preemption . . . applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014) (quoting *Dennis*, 724 F.3d at 1254). To determine whether a claim is completely preempted, the court asks whether Congress "(1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland*, 969 F.3d at 906 (citing *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018)). Complete preemption is "rare." *Hansen*, 902 F.3d at 1057 (quoting *Retail Prop. Tr.*, 768 F.3d at 947). The Supreme Court has identified only three complete preemption statutes: § 301 of the Labor

Management Relations Act, § 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA), and §§ 85 and 86 of the National Bank Act. *City of Oakland*, 969 F.3d at 905–06.

Complete preemption is an exception to the well-pleaded complaint rule. *Id.* at 905. Under the well-pleaded complaint rule, a civil action arises under federal law for purposes of federal question jurisdiction when a federal question appears on the face of the complaint. *Id.* at 903 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Under the rule, removal must be based on the plaintiff's claims and cannot be based on a defendant's federal defense. *Id.* at 903–04. But the exception for complete preemption, the "artful-pleading doctrine[,] . . . allows removal where federal law completely preempts a plaintiff's state-law claim." *Id.* at 905 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)).

## 2. The PREP Act

Passed by Congress in 2005, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1). Both "covered countermeasure" and "covered person" are terms defined in the Act. *See* § 247d-6d(i)(1)–(2). The PREP Act is invoked when "the [HHS] Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency . . . ." § 247d-6d(b)(1). The Secretary "controls the scope of immunity through the declaration and amendments, within the confines of the PREP Act." *Maglioli*, 16 F.4th at 401.

The Secretary's declaration "may specify[] the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures." § 247d-6d(b)(1). The PREP Act created the Covered Countermeasure Process Fund to compensate "eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration . . . ." § 247d-6e(a).

Section 247d-6d(d)(1) provides that "the sole exception to the immunity from suit and liability of covered persons . . . shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . by such covered person." Such an action "shall be filed and maintained only in the United States District Court for the District of Columbia." § 247d-6d(e)(1). The term "willful misconduct" is defined in the Act. § 247d-6d(c)(1)(A). An individual may not bring a suit under § 247d-6d(d)(1) unless the individual has exhausted the remedies available under § 247d-6e(a), the Covered Countermeasure Process Fund. § 247d-6e(d)(1).

In March 2020, the Secretary issued a declaration under the PREP Act "to provide liability immunity for activities related to medical countermeasures against COVID-19." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020). The declaration provided immunity for covered persons for the use of covered measures, including "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . ." *Id.* at 15,202. The Secretary has issued subsequent amended declarations throughout the

pandemic. *See* Seventh Amendment to Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14,462 (Mar. 16, 2021).

### 3.   Whether the PREP Act is a Complete Preemption Statute

Glenhaven's complete preemption argument relies on the HHS Secretary's and the HHS Office of General Counsel's respective conclusions that the PREP Act is a complete preemption statute. Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 7874 (Feb. 2, 2021); Dep't Health & Hum. Servs., General Counsel Advisory Opinion 21-01 (Jan. 8, 2021). But "[c]omplete preemption is really a jurisdictional rather than a preemption doctrine[.]" *Dennis*, 724 F.3d at 1254 (internal quotation omitted). And an agency's opinion on federal court jurisdiction is not entitled to *Chevron* deference. *Dandino, Inc. v. U.S. Dep't of Transp.*, 729 F.3d 917, 920 n.1 (9th Cir. 2013). Thus, Glenhaven's reliance on the Advisory Opinion is misplaced and not a sufficient basis to establish complete preemption and thus federal jurisdiction.

Instead of deferring to an opinion of the Office of General Counsel, this court applies the two-part test articulated in *City of Oakland*: (1) did Congress intend to displace a state-law cause of action and (2) did Congress provide a substitute cause of action? 969 F.3d at 906. Turning to the statute's text, the PREP Act states that it provides *immunity* under certain conditions for "covered person[s]" who use "covered countermeasure[s]." 42 U.S.C. § 247d-6d(a)(1). Subsection (d) is the only subsection that explicitly states that there shall be an "exclusive Federal

cause of action," limited to claims against "covered persons" for "willful misconduct," as the terms are defined in the Act. § 247d-6d(d). The provision of one specifically defined, exclusive federal cause of action undermines Glenhaven's argument that Congress intended the Act to completely preempt all state-law claims related to the pandemic. The text of the statute shows that Congress intended a federal claim only for willful misconduct claims and not claims for negligence and recklessness. § 247d-6d(c)(1)(B). An administrative compensation fund, not an exclusive federal cause of action, provides the only redress for claims brought under the Act, other than those alleging "willful misconduct." The PREP Act neither shows the intent of Congress to displace the non-willful misconduct claims brought by the Saldanas related to the public health emergency, nor does it provide substitute causes of action for their claims. Thus, under this court's two-part test, the PREP Act is not a complete preemption statute.

Glenhaven argues that the PREP Act may preempt one of the Saldanas' claims—the second cause of action under state law for willful misconduct. Whether the claim is preempted by the PREP Act turns on whether any of the conduct alleged in the complaint fits the statute's definitions for such a claim. But finding that one claim *may* be preempted is different than finding that the "federal statutory scheme is so comprehensive that it *entirely supplants* state law causes of action," such as the Saldanas' other causes of action for elder abuse, custodial negligence, and wrongful death. *Retail Prop. Tr.*, 768 F.3d at 947 (emphasis added) (quoting *Dennis*, 724 F.3d at 1254); *see also Caterpillar*, 482 U.S. at 393 (distinguishing between complete preemption and raising a federal defense); *Toumajian v. Frailey*, 135 F.3d 648, 654 (9th Cir. 1998) (distinguishing between complete preemption and "conflict preemption" of

a particular claim). Thus, the district court's remand order for lack of federal subject matter jurisdiction based upon complete preemption was proper.

## C.  Embedded Federal Question

Glenhaven argues that the district court has jurisdiction under the embedded federal question doctrine. Under this doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). The well-pleaded complaint rule applies when determining whether the embedded federal question doctrine applies. *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011).

Here, the Saldanas' complaint states four causes of action: elder abuse, willful misconduct, custodial negligence, and wrongful death. The claims in the complaint are raised under California law and do not raise questions of federal law on the face of the complaint. Glenhaven seeks to raise a federal defense under the PREP Act, but a federal defense is not a sufficient basis to find embedded federal question jurisdiction. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1090 (9th Cir. 2009).

Glenhaven argues that the Saldanas' willful misconduct claim raises a federal issue under the PREP Act. Glenhaven does not identify how a right or immunity created by the PREP Act must be an essential element of the willful misconduct claim as stated in the complaint. On its face, the issue is not a "substantial" part of the Saldanas' complaint because, according to the complaint, only some of the steps Glenhaven allegedly took, and did not take, may have

involved a "covered person," under the PREP Act. Thus, remand is proper because the complaint does not present an embedded federal question.

## IV. CONCLUSION

Glenhaven did not act under a federal officer or carry out a federal duty when it provided care to Ricardo Saldana. The PREP Act does not completely preempt the Saldanas' claims, and the possible preemption of one claim cannot be determined by this court or the district court. And there is no embedded federal question in the Saldanas' complaint. Thus, the district court lacked subject matter jurisdiction, and the suit was properly remanded to state court.

**AFFIRMED.**