[Cite as *Wilhelms v. ProMedica Health Sys., Inc.*, 2023-Ohio-143.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Andrew J. Wilhelms, et al. | Court of Appeals No. L-22-1085 |
| Appellants | Trial Court No. CI0202003713 |
| v. | |
| ProMedica Health System, Inc., et al. | **DECISION AND JUDGMENT** |
| Appellees | Decided: January 18, 2023 |

* * * * *

Robert W. Kerpsack, for appellants.

Julia Smith Wiley, Corey L. Tomlinson, and Jeff M. Smith,
for appellee, ProMedica Health Systems, Inc.

Michael P. Murphy, Taylor C. Knight, and Alexander M.
Esposito, for appellee, Moshir K. Jacob, M.D.

* * * * *

**DUHART, P.J.**

{¶ 1} Appellants, Andrew and Valerie Wilhelms, appeal the March 28, 2022

judgments of the Lucas County Court of Common Pleas, granting the Civ.12(C) Motion

for Judgment on the Pleadings by defendant-appellees ProMedica Defendants[1] and the Civ.R. 12(B)(1) and (6) Motion to Dismiss of defendant-appellee, Moshir Jacob, M.D. on the grounds that appellants' medical malpractice claims against the appellees were pre-empted by, and fell within, the liability and immunity provisions of the Public Readiness and Emergency Preparedness Act, ("the Prep Act), 42 U.S.C. 247d-6d(a)(2)(B).

{¶ 2} While the statutory provisions of the Prep Act and the ultimate facts of this medical malpractice action may be complicated, the dispositive issue in this appeal is quite narrow at this stage of litigation. Appellants allege the appellees provided negligent medical care during the times appellees were treating Andrew for COVID-19, which they allege resulted in the development of pressure ulcers/bed sores. At various times, appellees used a ventilator/respirator, which is a "covered counter measure" under the Prep Act, in treating Mr. Wilhlem's COVID-19. We find the question for consideration is, Does the limited evidence in the trial court record establish as a matter of law that the Wilhelms' claims for loss, [i.e. the development of pressure ulcers/bed sores] were caused by, arose out of, relate to, or result from the administration or use of a covered counter measure, i.e. the ventilator/respirator?

{¶ 3} Based upon our review of the trial court record, and reviewing the limited evidence before the trial court, we find that the trial court erred in finding as a matter of

---

[1] The trial court's judgment entries refer to defendants-appellees ProMedica Health System, Inc., Bay Park Community Hospital, The Toledo Hospital, ProMedica Flower Hospital, as the ProMedica Defendants. For ease of discussion, we will also use the term ProMedica Defendants for purposes of discussion here.

2.

law that the appellants' medical negligence claims for the development of pressure ulcers/bed sores fell within the scope of the liability and immunity provisions of the Prep Act. We reverse the judgments of the trial court, and remand this matter for further proceedings.

*Facts and Procedural History*

{¶ 4} The Wilhelms filed this medical malpractice action against the appellees. To summarize, in their first amended complaint, the Wilhelms alleged that while Andrew was a patient under the care of the ProMedica Defendants and Jacob between March 29 and May 30, 2020, appellees failed to properly staff, properly supervise, identify potential risk factors, and properly provide nursing care services within the requisite standard of care causing Andrew to sustain permanent physical injuries, including pressure ulcers and/or bed sores. At various points during this treatment, Andrew was hospitalized and treated by the appellees for COVID-19. Andrew was also placed on a ventilator/respirator during his hospitalization to treat his COVID-19.

{¶ 5} On April 26, 2021, appellee Jacob filed a Motion to Dismiss pursuant to Civ.R. 12(B)(6) and 12(B)(1), which contained an affidavit by Jacob, and which attached pages of Andrew's medical records. The ProMedica Defendants then filed a Civ.R. 12(C) Motion for Judgment on the Pleadings. Appellants filed memoranda in opposition to both motions.

3.

**{¶ 6}** In their respective motions, appellees each alleged that the Wilhelms' malpractice claims, were preempted by the Prep Act. Specifically, appellees alleged in their motions that appellants' medical negligence claims were barred and fell within the immunity provisions of the Prep Act because the Wilhelms' claims for loss, which included the pressure ulcers/bed sores that developed during Andrew's hospitalization with COVID-19, were caused by, arose out of, related to, or resulted from the administration to or use * * * of a covered COVID-19 counter measure, i.e. appellees' use of a ventilator/respirator in treating Mr. Wilhelms. The trial court agreed with appellees and ruled the Wilhelms' medical malpractice claims had "*the requisite causal relationship with administration of the mechanical ventilator* used to treat Mr. Wilhelms' COVID-19 infection." (Emphasis added.) Appellants timely appealed the trial court's findings.[2]

**{¶ 7}** Appellants present two assignments of error for review:

---

[2] The Wilhelms also alleged in their first-amended complaint that the appellees' conduct was also willful and wanton. In ruling that the Wilhelms claims had the requisite causal connection to trigger the negligence immunity afforded under the Prep Act, the trial court also observed that because of the causal connection, the trial court lacked jurisdiction to review the "willful and wanton claims," which were then required to be brought in United District Court for the District of Columbia. Because we find the trial court erred in finding the causal relationship that triggered the immunity provisions of the Prep Act, we find that the trial court also erred in ruling that the Wilhelms' "willful and wanton" were required to be brought in United District Court for the District of Columbia. Accordingly, appellant's first-amended complaint is remanded in its entirety for consideration.

4.

I. The trial court committed reversible error to the substantial prejudice of appellants Andrew J. Wilhelms and Valerie L. Wilhelms by ordering judgment on the pleadings pursuant to Civ.R. 12(C) in favor of appellees ProMedica Health System, Inc., Bay Park Community Hospital, The Toledo Hospital, ProMedica Flower Hospital * * *.

II. The trial court committed reversible error to the substantial prejudice of appellants Andrew J. Wilhelms and Valerie L. Wilhelms by ordering judgment of dismissal pursuant to Civ.R. 12(B)(1) and 12(B)(6) in favor of appellee, Moshir Jacob, Md. * * *.

Because appellants' assignments of error are related, they will be discussed together.

*The Prep Act*

{¶ 8} The Prep Act provides for liability and immunity protections for certain claims arising during the COVID-19 pandemic. 42 U.S.C. 247D-6d provides:

§ 247d-6d. Targeted liability protections for pandemic and epidemic products and security countermeasures

(a) **Liability protections**

(1) **In general**

Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from

the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

**(2) Scope of claims for loss**

**(A) Loss**

For purposes of this section, the term "loss" means any type of loss, including--

(**i**) death;

**(ii)** physical, mental, or emotional injury, illness, disability, or condition;

**(iii)** fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and

\* \* \*

Each of clauses (i) through (iv) applies without regard to the date of the occurrence, presentation, or discovery of the loss described in the clause.

**(B) Scope**

The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the

design, development, clinical testing or investigation, manufacture* * *
dispensing, prescribing, administration, licensing, or use of such
countermeasure.

The liability and immunity limitation in 247d-6d (a)(1) is limited to "covered countermeasures," which are defined as follows:

**(1) Covered countermeasure**

The term "covered countermeasure" means--

**(A)** a qualified pandemic or epidemic product (as defined in paragraph (7));

**(B)** a security countermeasure (as defined in section 247d-6b(c)(1)(B) of this title);

**(C)** a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)),[2] biological product (as such term is defined by section 262(i) of this title), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act; or

**(D)** a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code

of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title.

42 U.S.C. 247d-6d(i)(1).

The term "covered person" is defined as follows:

> **(2) Covered person**. The term "covered person", when used with respect to the administration or use of a covered countermeasure, means—
>
> * * *
>
> **(B)** a person or entity that is—
>
> (i) a manufacturer of such countermeasure;
>
> (ii) a distributor of such countermeasure;
>
> (iii) a program planner of such countermeasure;
>
> (iv) a qualified person who prescribed, administered, or dispensed such countermeasure; or
>
> (v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv).

42 U.S.C. 247d-6d(i)(2).

**{¶ 9}** The parties appear to agree that a ventilator/respirator, such as that used to treat Andrew during his hospitalization, falls within the definition of a "covered countermeasure."

8.

**{¶ 10}** As noted, the ProMedica appellees moved for judgment on the pleadings pursuant to Civ.R. 12(C)(1), while appellee Jacob moved for dismissal for lack of subject matter jurisdiction pursuant to Civ.R. 12(B)(1) and 12(B)(6). Despite the procedural difference in the motions, the trial court applied the same reasoning in granting both motions. The trial court found as a matter of law that the PREP Act preempts and/or immunizes the appellees from the Wilhelms' negligence claims because the Wilhelms' claims "have the requisite causal relationship with administration of the mechanical ventilator used to treat Mr. Wilhelms' COVID-19 infection."

*Review of a Civ.R. 12 Dismissal*

**{¶ 11}** In *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 80, 537 N.E.2d 641, (1989), the Court addressed the review of a Civ.R. 12(B)(1) and (6) order granting dismissal:

> The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) is whether any cause of action cognizable by the forum has been raised in the complaint. *Avco Financial Services Loan, Inc. v. Hale* (1987), 36 Ohio App.3d 65, 67, 520 N.E.2d 1378, 1380, citing *Steffen v. General Tel. Co.* (1978), 60 Ohio App.2d 144, 14 O.O.3d 111, 395 N.E.2d 1346. A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted will only be granted where the party opposing the motion is unable to prove any set of facts that would entitle him to relief. *Korodi v.*

*Minot* (1987), 40 Ohio App.3d 1, 3, 531 N.E.2d 318, 321. Indeed, before a court may dismiss an action under this rule, " * * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. University Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. To make this determination, the court is required to interpret all material allegations in the complaint as true and admitted. *Phung v. Waste Management, Inc.* (1986), 23 Ohio St.3d 100, 102, 23 OBR 260, 262, 491 N.E.2d 1114, 1116.

{¶ 12} In reviewing an order granting judgment on the pleadings, courts apply the following:

> Under Civ.R. 12(C), a party may move for judgment on the pleadings after the pleadings have closed, but within such time as to not delay trial. "A motion for judgment on the pleadings presents only questions of law and *may only be granted when no material issues of fact exist* and the moving party is entitled to judgment as a matter of law." *Mousa v. Mount Carmel Health Sys., Inc.,* 10th Dist. No. 12AP-737, 2013-Ohio-2661, ¶ 10. In construing a motion for judgment on the pleadings under Civ.R. 12(C), the pleadings and any reasonable inferences to be drawn therefrom are to be liberally construed in favor of the non-moving

party. *Id.* "Appellate review of motions for judgment on the pleadings is de novo." *Id.*

*Roddy v. Williamson*, 10th Dist. Franklin No. 16AP-195, 2016-Ohio-8437, ¶ 6. (Emphasis added.) *See also State ex rel. Midwest Pride IV, Inc. v. Pontius*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996)) ("Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law.").

{¶ 13} "In order to grant such a motion, it must appear, considering all the averments of the pleadings, that simply a question of law is presented. *If an issue of fact, or a direct issue joined on any single material proposition is made, requiring the introduction of testimony by the moving party to sustain such issue*, the motion will be denied." *Wainscott v. Young*, 74 Ohio App. 463, 464, 59 N.E.2d 609 (1st Dist.1944). (Emphasis added.)

{¶ 14} In determining whether a court granted relief pursuant to Civ.R. 12(B) or Civ.R. 12(C), "A reviewing court must examine the entire journal entry and the proceedings below where necessary to ascertain the precise basis of a lower court's judgment." *State ex rel. Midwest Pride IV, Inc*. at 569, quoting *Joyce v. Gen. Motors Corp.* 49 Ohio St.3d 93, 95, 551 N.E.2d 172 (1990). *See id*, quoting *Burnside v. Leimbach*, 71 Ohio App.3d 399, 402–403, 594 N.E.2d 60 (10th Dist.1991). ("Civ.R. 12(C) permits consideration of the complaint and answer, but a Civ.R. 12(B)(6) motion

11.

must be judged on the face of the complaint alone."). We also note that Civ.R. 8(A) only requires "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *David v. Matter,* 2017-Ohio-7351, 96 N.E.2d 1012, ¶ 24 (6th Dist.), quoting *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d, ¶ 5.

{¶ 15} The trial court issued two nearly identical decisions dismissing appellants' amended complaint. We find that despite the filing of both a Civ.R. 12(B)(1) and (6) motion by appellee Jacob and a Civ.R. 12(C) motion by the ProMedica Defendants, in examining the entire journal entries and the proceedings below, the trial court's March 28 orders both effectively granted appellees judgment pursuant to 12(C). Thus, even though appellee Jacob's motion was captioned as a Civ.R. 12(B) motion, we will review this matter pursuant to Civ.R. 12(C).

{¶ 16} We find that applying this standard of review, and viewing the allegations and complaint in a light most favorably to appellants as we must at this stage in the litigation, there is a genuine material dispute as to whether the Wilhelms' claims for loss are caused by, arose out of, relate to, or resulting from the administration to or use * * * of a covered measure", which would trigger the immunity and liability protections in 42 U.S.C. 247D-6d. Accordingly, the judgments of the trial court must be reversed.

{¶ 17} The affidavit and medical records attached to Jacob's motion to dismiss included Andrew's medical records reciting that he had been hospitalized and treated for COVID-19 during the time period in question, and that Andrew had been placed on a

12.

respirator at various points during his hospitalization. The medical records stated that appellant also "developed pressure ulcers relating to his hospital stay." Notably, the affidavit and the medical records *do not* state that Wilhelms' pressure ulcers/bed sores were caused by, arose out of, related to, or resulted from the administration of or the use of the ventilator or respirator, a covered countermeasure under the Prep Act.[3]

{¶ 18} The trial court also took no testimony on the issue, which it was permitted to do under Civ.R. 12(B). No depositions or affidavits were filed establishing causation between Mr. Wilhelms' pressure ulcers and the use of the ventilator/respirator. Both the ProMedica Defendants and Defendant Jacob asked the trial court to conclude as a matter of law that appellant's damages, his pressure ulcers/bed sores were caused by, arose out of, related to, or resulted from the administration of or the use of the ventilator/respirator, thus triggering the immunity and liability protections of the Prep Act. Similarly, appellee Jacob states in his brief that "all of the allegations against all of the medical defendants in this case * * * are related to the treatment of bedsores, which he developed while

_____

[3] Even if the court were to review the trial court's dismissal with respect to appellee Jacob under Civ.R. 12(B)(1), the current trial court record, i.e. pleadings and affidavits, before the trial court was insufficient to establish the requisite causal relationship with administration of the mechanical ventilator used to treat Mr. Wilhelms' COVID-19 infection and his injuries, and the trial court's causal finding based upon the limited evidence in the record was clearly erroneous. *See e.g. Linkous v. Mayfield*, 4th Dist. Scioto No. CA1894, 1991 WL 100358, *4 ( June 4, 1991) ("In determining a motion to dismiss for lack of subject matter jurisdiction, the court is not restricted to the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction to hear the action. 2A Moore's Federal Practice (1985) 12-45-12-46, Para. 12.07[2.-1]").

13.

immobilized and isolated on a ventilator, receiving treatment of Covid 19." Appellees also describe Wilhelm's injuries as "ventilator related injuries."

{¶ 19} Despite the lack of evidence as to causation in the record, and the parties' clear factual disputes as to the applicability of the immunity of the Prep Act, the trial court concluded there was a "requisite causal relationship with administration of the mechanical ventilator used to treat Mr. Wilhelms' COVID-19 infection."

{¶ 20} Reviewing the limited record presented at this stage in the litigation, in a light most favorable to appellants as we must, we cannot say that the record establishes as matter of law that the Wilhelms' claimed injuries and claims for loss were caused by, arose out of, relate to, or resulted from the administration to or use * * * of a covered measure. The trial court's decision essentially treats the mere use of a ventilator/respirator, i.e., a covered counter countermeasure, at various points of Wilhelms' hospitalization as determinative evidence that all the individuals and entities that treated Wilhelms were all "covered persons" and that the loss or injuries caused arose out of, related to, or resulted from the administration of or the use of the ventilator/respirator.

{¶ 21} Since the time of oral argument, appellants have provided the court with supplemental authorities addressing the scope of the Prep Act and its relation to state medical malpractice cases. These cases make clear that the analysis as to whether the Prep Act immunity applies in a state medical malpractice case involves a fact-intensive

14.

examination of the evidence and record, which was not present before the trial court, to establish the causation which the trial court presumed. These cases have rejected the broad interpretation urged by the trial court and appellees. *See e.g. Goins v. Saint Elizabeth Med. Ctr.* No. 22-91-DLB-CJS, 2022 WL 17413570 (E.D. Ken. Nov. 9, 2022); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 689 (9th Cir. 2022), *cert. denied,* No. 22-192, 2022 WL 17085186 (U.S. Nov. 21, 2022); and *Levert v. Montefiore Home*, No. 1:21-CV-02312, 2022 WL 4591253, *4 (N.D. Ohio Sept. 30, 2022)

{¶ 22} The recent decision in *Goins v. Saint Elizabeth Med. Ctr.* is particularly instructive and persuasive. In that case, the plaintiff, Goins, filed an action in state court, alleging claims against ModernaTX, Inc. ("Moderna"), the manufacturer of a COVID-19 vaccine that Ms. Goins received; the Kroger Company ("Kroger"), which distributed the vaccine and provided it to Ms. Goins; Saint Elizabeth Medical Center ("St. Elizabeth"), which provided care to Ms. Goins during a health episode following her receipt of the vaccine; Tri-State Gastroenterology Associates ("Tri-State") and Dr. Joel Warren, who performed a surgery on Ms. Goins as part of the same health episode. The matter was removed to federal court and each of the parties moved for dismissal based upon the liability and immunity provisions of the Prep Act.

{¶ 23} The District Court granted the motion to dismiss of Moderna and Kroger finding that the claimed losses clearly were alleged to have been caused by, arose out of, related to, or resulted from the administration of, or the use of the Moderna vaccine, a

15.

covered countermeasure. However, the District Court was unwilling to find that the Prep Act immunity and liability protections applied to Warren and Tri-State:

> To the extent that Dr. Warren argues that his treatment of Ms. Goins *after* she received a vaccine amounts to him "administering" a covered countermeasure, that argument is also unavailing. (*See* Doc. # 15-1 at 2). The March 2020 declaration provides further guidance on the PREP Act's usage of the term "administration," specifying that "[t]he definition of 'administration' extends only to *physical provision* of a countermeasure to a recipient, such as ... activities related to management and operation of programs and locations for providing countermeasures to recipients[.]" Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15200 (March 17, 2020) (emphasis added). * * *

> "Administration" of the vaccine thus refers to the logistical work it takes to provide vaccines, and Tri-State and Dr. Warren were not at all involved in Ms. Goins' receipt of the Moderna vaccine. In the Complaint, the vaccine itself is only mentioned once following Ms. Goins' retelling of her receiving the dose at Kroger: at Paragraph 26, where she writes that an unidentified group of doctors "stated [her condition] could have been a

reaction to her July 31, 2021 second Moderna COVID-19 vaccine." (Doc. # 1-2 ¶ 26).

Otherwise, a close reading of the statute itself reveals that Dr. Warren is not a "covered person." In defining "covered person," the PREP Act uses past tense to state that a "covered person" is one who "prescribed, administered, or dispensed such countermeasure[.]" 42 U.S.C. § 247d-6d(i)(2)(B)(iv).  Federal statutes "ascribe[ ] significance to verb tense," and different verb tenses carry different meanings. *Carr v. United States*, 560 U.S. 438, 448 (2010) (citing 1 U.S.C. § 1); *see also Russell v. Citigroup, Inc.*, 748 F.3d 677, 679 (6th Cir. 2014). In the PREP Act, Congress chose to use the simple past tense "prescribed" instead of the present perfect tense "has prescribed" or the present tense "prescribes." *See* 42 U.S.C. § 247d-6d(i)(2)(B)(iv).  The simple past tense "refers to action completed at a definite time in the past," while the present perfect tense "refers to action already completed or continuing in the present." Robert C. Farrell, *Why Grammar Matters: Conjugating Verbs in Modern Legal Opinions*, 40 Loy. U. Chi. L. J. 1, 19 (2008).  Here, the statute's usage of "prescribed, administered, or dispensed," in the simple past tense, refers to an action completed at a definite time – when the countermeasure was prescribed, administered, or dispensed to the plaintiff.

17.

Thus, even though Ms. Goins' claims against Dr. Warren and Tri-State are related to her COVID vaccine, none of her claims, and most importantly, none of the facts asserted alongside her claims, make allegations regarding Dr. Warren and Tri-State's prescription, administration, or dispensation of the vaccine. In that absence, Dr. Warren and Tri-State are not "covered persons" under the PREP Act, and its immunities are thus unavailable to them. For that reason, their Motion to Dismiss * ** is denied.

*The overwhelming bulk of facts in this case relate not to Ms. Goins' vaccine, but instead to the medical care she received after taking the vaccine.* To the extent that Ms. Goins has tacked on claims against the vaccine manufacturer and distributor, for whatever reasons she and her counsel chose to do so, it is appropriate that those entities have removed the case to federal court and invoked protections under the federal PREP Act to which they are legally entitled. *Otherwise, in the absence of the vaccine defendants, this case is an ordinary malpractice suit brought under Kentucky law, by a Kentucky plaintiff, against Kentucky defendants.* The matter will accordingly be remanded to state court for further adjudication. (Emphasis added.)

{¶ 24} As in the *Goins* case, we cannot say based upon the current record that the mere allegation that Mr. Wilhelms developed pressure ulcers and bed sores after being placed on a ventilator/respirator at some point during his COVID hospitalization and treatment is sufficient to establish that (1) all individuals treating appellant during the entire course of his treatment were "covered persons" under the Prep Act and; (2) the Wilhelms' alleged loss or injuries were caused by, arose out of, related to, or resulted from the administration of, or the use of a covered countermeasure.

{¶ 25} Thus, we conclude that the matter should be reversed and remanded for further proceedings. *See Saldana* at 689 (Remand to state court affirmed where "only some of the steps Glenhaven allegedly took, and did not take, may have involved a 'covered person,' under the PREP Act. Thus, remand is proper because the complaint does not present an embedded federal question.'"); *See also Levert* at *4 ("The Complaint merely referencing Covid testing * * * is not the equivalent of alleging "improper use" or "administration" of Covid-19 diagnostic tests. Here, Plaintiff does not allege that his father was injured due to Defendants' improper "administration" or "use" of a Covid test.").

{¶ 26} Accordingly, we find appellants' first and second assignments or error well-taken.  The judgments of the Lucas County Court of Common Pleas are reversed

19.

and this matter is remanded for proceedings consistent with this decision.[4]  The costs of

this matter are assessed to appellees pursuant to App.R. 24.  It so ordered.

Judgment reversed,<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                                     JUDGE

Gene A. Zmuda, J.

                                  _____
Myron C. Duhart, P.J.                                JUDGE
CONCUR.

                                  _____
                                                     JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

---

[4] In deciding this matter, the court has not been asked to address the application or
constitutionality of Ohio H.B. 606 and expresses no opinion thereon.